UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

       Plaintiff,

v.

BANDWIDTH INC.,

       Defendant.

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff Mark W. Dobronski, appearing *in propria persona*, for his Complaint against Defendant Bandwidth Inc. ("Bandwidth"), alleges as follows:

**INTRODUCTION**

1.    This case concerns a voice-service provider's misuse of robocall-mitigation or network-compliance blocking authority against a residential telephone subscriber.

2.    Plaintiff Mark W. Dobronski is the residential subscriber and lawful user of four residential telephone numbers. For personal privacy and protection, Plaintiff does not disclose the full telephone numbers in this public filing. Plaintiff instead refers to the affected telephone numbers as the "12 Number," "24 Number," "00 Number," and "22 Number." Collectively, those numbers are referred to as

1

"Plaintiff's Phone Numbers."  Plaintiff can provide the full telephone numbers to the Court under seal or through an appropriate protective procedure if necessary.

3.      Defendant Bandwidth Inc. imposed, maintained, or caused a network-level compliance rule on the terminating side of the call path, thereby preventing inbound calls from completing to Plaintiff's Phone Numbers.

4.      Bandwidth admitted, through Plaintiff's retail carrier Anveo, that the impacted telephone numbers "are currently being blocked by a network-level compliance rule on the terminating side," and that "[a]s a result, inbound calls to these numbers are not completing."

5.      That admission materially narrows the dispute. This is not an intermittent routing problem, customer-equipment issue, porting issue, or unexplained network anomaly. Bandwidth intentionally caused inbound calls to Plaintiff's Phone Numbers not to complete.

6.      If Bandwidth believed that Plaintiff's telephone numbers were being spoofed or used as originating ANI in connection with unlawful outbound traffic, lawful mitigation would have concerned calls purporting to originate from those numbers.

7.      Bandwidth instead disabled Plaintiff's ability to receive ordinary incoming calls to his residential telephone numbers.

8. Bandwidth did not merely block robocalls. Bandwidth blocked the robocall victim.

9. Bandwidth's conduct is especially troubling because Bandwidth had already been warned by the Anti-Robocall Multistate Litigation Task Force about continuing concerns that Bandwidth was transmitting high-volume illegal and/or suspicious robocall traffic, and Plaintiff himself had repeatedly complained to Bandwidth about illegal robocalls involving Bandwidth numbers or Bandwidth-associated traffic.

10. Bandwidth also failed to provide a meaningful public-facing point of contact through which an affected telephone subscriber could challenge erroneous call blocking.

11. Bandwidth failed to provide required blocked-call information.

12. Bandwidth failed to promptly remove the erroneous terminating-side call treatment after receiving actual notice that the blocked numbers were Plaintiff's lawful residential telephone numbers.

13. At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

14. Bandwidth's conduct violates 47 C.F.R. § 64.1200(k), is actionable

through 47 U.S.C. § 227(c)(5), and independently constitutes unjust and unreasonable carrier conduct and unreasonable prejudice or disadvantage under the Communications Act.

## PARTIES

15.     Plaintiff Mark W. Dobronski is a natural person, of the age of majority, residing in Washtenaw County, Michigan.

16.     Defendant Bandwidth Inc. is a corporation organized under the laws of Delaware with its principal place of business in North Carolina, which is qualified and registered to do business in Michigan, with a registered office address of 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

17.     Bandwidth provides voice services, numbering services, telecommunications services, interconnected VoIP services, wholesale voice services, routing services, call-completion services, and related communications services.

18.     Bandwidth provides, carries, routes, terminates, processes, blocks, labels, or otherwise treats telephone traffic in interstate commerce, including traffic affecting Michigan residents and Michigan residential telephone subscribers.

19.     At all relevant times, Bandwidth acted as a common carrier, telecommunications carrier, voice service provider, intermediate provider, terminating provider, and/or entity engaged in the provision, routing, treatment,

4

blocking, or completion of interstate voice communications.

20.     To the extent Bandwidth contends that any affiliated entity, subsidiary, contractor, customer, vendor, designee, system, database, or automated process imposed the terminating-side block, Plaintiff pleads that Bandwidth acted directly and/or through its agents, designees, systems, vendors, customers, contractors, or controlled network facilities.

## JURISDICTION AND VENUE

21.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, the Communications Act, and FCC regulations.

22.     This Court has jurisdiction over Plaintiff's TCPA claim under 47 U.S.C. § 227(c)(5).

23.     This Court has jurisdiction over Plaintiff's Communications Act claims under 47 U.S.C. §§ 206, 207, and 406.

24.     This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

25.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, the injury occurred in this District, the blocked residential telephone service was used by Plaintiff in this District, and a substantial part of the

5

events or omissions giving rise to the claims occurred in this District.

26.     Bandwidth is subject to personal jurisdiction in Michigan because Bandwidth provides, routes, terminates, blocks, labels, or treats voice traffic to and from Michigan; conducts business affecting Michigan telephone subscribers; and caused injury to Plaintiff in Michigan by preventing inbound calls from completing to Plaintiff's Phone Numbers.

## FACTUAL ALLEGATIONS

### Plaintiff's Residential Telephone Numbers

27.     Plaintiff is the residential subscriber and lawful user of the 12 Number, 24 Number, 00 Number, and 22 Number.

28.     Plaintiff's 12 Number is listed on the National Do Not Call Registry and has been so listed since June 29, 2003.

29.     Plaintiff's 24 Number is listed on the National Do Not Call Registry and has been so listed since June 29, 2023.

30.     Plaintiff's 00 Number is listed on the National Do Not Call Registry and has been so listed since June 1, 2004.

31.     Plaintiff's 22 Number is listed on the National Do Not Call Registry and has been so listed since August 24, 2022.

32.     Plaintiff's Phone Numbers are residential telephone numbers.

33.     Plaintiff's Phone Numbers appear on telephone sets at Plaintiff's residence located in Washtenaw County, Michigan.

34.     Plaintiff's Phone Numbers are not telemarketing numbers.

35.     Plaintiff's Phone Numbers are not robocall numbers.

36.     Plaintiff's Phone Numbers are not scam numbers.

37.     Plaintiff's Phone Numbers are not spoofed numbers.

38.     Plaintiff did not ask Bandwidth to block his numbers.

39.     Plaintiff did not authorize Bandwidth to label, warn against, restrict, reject, or block calls to Plaintiff's Phone Numbers.

40.     Plaintiff did not authorize Bandwidth to tell callers that any of Plaintiff's Phone Numbers had been identified as likely a scam.

41.     Plaintiff did not authorize Bandwidth to make Plaintiff's Phone Numbers unreachable to incoming callers.

### The Impairment Began on April 19, 2026

42.     On April 19, 2026, at approximately 6:30 p.m. Eastern Time or shortly thereafter, Bandwidth imposed, activated, caused, or allowed the terminating-side network-level compliance rule or related call-treatment condition affecting Plaintiff's Phone Numbers.

43.     Before that time, Plaintiff's Phone Numbers were receiving inbound calls

7

in the ordinary course.

44. After that time, inbound calls to the 12 Number, 24 Number, and 00 Number were blocked, rejected, dumped, or otherwise not completed.

45. Those calls did not complete to Plaintiff.

46. Plaintiff did not receive ordinary inbound call delivery for those attempted calls.

47. The problem was not limited to one caller, one device, or one isolated call attempt.

48. With respect to the 22 Number, callers received a recorded announcement stating: "The number you are calling has been identified as likely a scam. It is recommended that you hang up now."

49. That announcement was false.

50. The 22 Number is Plaintiff's residential telephone number.

51. The 22 Number is not a scam number.

52. The 22 Number is not a fraud number.

53. The 22 Number is not a spam number.

54. The 22 Number is not a telemarketing number.

55. The 22 Number is not a robocall number.

56. The announcement discouraged callers from completing calls to Plaintiff.

8

57. The announcement impaired Plaintiff's ability to receive ordinary residential telephone communications.

58. The announcement harmed Plaintiff's reputation and falsely associated Plaintiff's residential telephone number with scam, fraud, spam, or unlawful calling activity.

59. The timing of the change is significant because it identifies when Bandwidth's terminating-side call treatment began and will permit Bandwidth's records, logs, compliance-rule data, SIP records, routing records, announcement records, and blocked-call data to confirm who or what caused the change.

<u>Plaintiff Escalated the Issue Through Anveo</u>

60. Plaintiff's retail telephone carrier is Anveo, Inc. ("Anveo").

61. Plaintiff reported the call-completion problem to Anveo.

62. Anveo escalated the matter upstream.

63. Anveo informed Plaintiff that Bandwidth was Anveo's upstream carrier with respect to the issue.

64. Anveo obtained information from Bandwidth regarding the blocked numbers.

65. Bandwidth confirmed to Anveo that the impacted telephone numbers were "currently being blocked by a network-level compliance rule on the terminating

side."

66.     Bandwidth further confirmed that, "[a]s a result, inbound calls to these numbers are not completing."

67.     Bandwidth's admission establishes that Plaintiff's numbers were not failing because of customer equipment, an ordinary outage, a porting error, or an intermittent unexplained routing issue.

68.     Bandwidth's admission establishes that Bandwidth applied, caused, controlled, maintained, implemented, or enforced a network-level compliance rule.

69.     Bandwidth's admission establishes that the rule operated on the terminating side.

70.     Bandwidth's admission establishes that the effect of the rule was to prevent inbound calls to Plaintiff's Phone Numbers from completing.

71.     Bandwidth's admission establishes intentional network-level call treatment.

72.     Bandwidth's admission establishes terminating-side inbound call blocking.

Terminating-Side Inbound Blocking Is Not Proper Robocall Mitigation

73.     Bandwidth's terminating-side block is facially unreasonable.

74.     If Bandwidth believed that Plaintiff's telephone numbers were being used

to originate unlawful robocalls, the relevant issue would concern outbound traffic.

75.     If Bandwidth believed that Plaintiff's numbers were being spoofed as originating ANI, the relevant issue would concern calls purporting to originate from those numbers.

76.     If Bandwidth believed that calls using Plaintiff's numbers as ANI should be blocked, Bandwidth could address that alleged ANI-related issue through lawful, narrowly tailored treatment of calls purporting to originate from those numbers.

77.     Bandwidth instead blocked inbound calls to Plaintiff's Phone Numbers.

78.     Blocking inbound calls to Plaintiff's Phone Numbers does not prevent robocalls from being made.

79.     Blocking inbound calls to Plaintiff's Phone Numbers does not prevent spoofing.

80.     Blocking inbound calls to Plaintiff's Phone Numbers does not mitigate unlawful outbound traffic.

81.     Blocking inbound calls to Plaintiff's Phone Numbers disables the called party.

82.     Bandwidth did not merely block robocalls.

83.     Bandwidth blocked the robocall victim.

84.     Upon information and belief, Plaintiff previously reported a high volume

of robocalls to the FCC involving Bandwidth numbers, Bandwidth customers, Bandwidth-carried traffic, or Bandwidth-associated calling activity.

85. The timing, nature, and mismatch of Bandwidth's terminating-side inbound blocking support a reasonable inference that Bandwidth's action was retaliatory, punitive, or otherwise targeted at Plaintiff because he reported robocalls involving Bandwidth numbers or Bandwidth-associated traffic.

86. At minimum, Bandwidth's conduct was unreasonable because the terminating-side block was not narrowly tailored to any legitimate robocall-mitigation objective.

<u>Bandwidth's Notice of Recurrent Illegal Robocall Traffic<br>and Plaintiff's Prior Reports</u>

87. Bandwidth was not operating in a vacuum when it blocked Plaintiff's Phone Numbers.

88. On December 3, 2025, the Anti-Robocall Multistate Litigation Task Force sent Bandwidth a formal notice concerning Bandwidth's "continuing involvement in suspected illegal robocall traffic."

89. The Anti-Robocall Multistate Litigation Task Force is a bipartisan, 51-member collective of State Attorneys General focused on investigating and pursuing entities in the robocall ecosystem responsible for significant volumes of illegal and fraudulent robocall traffic.

12

90. The Task Force informed Bandwidth that its ongoing investigation had shown that Bandwidth had transmitted, and continued to transmit, calls associated with high-volume illegal and/or suspicious robocall campaigns on behalf of one or more of its customers.

91. The Task Force warned Bandwidth that it should scrutinize the call traffic of its current customers, evaluate the efficacy of its robocall-mitigation plan, policies, Know-Your-Customer practices, and onboarding practices, and cease transmitting illegal traffic on behalf of its current customers.

92. The Task Force reported that USTelecom's Industry Traceback Group had issued at least 3,060 traceback notices to Bandwidth since January 2019 for calls Bandwidth accepted and/or transmitted onto and across the United States telephone network.

93. The Task Force reported that those traceback notices cited recurrent high-volume illegal and/or suspicious robocalling campaigns, including Amazon/Apple imposters, SSA/IRS government imposters, financial services/order imposters, auto warranty scams, credit card interest-rate and debt-reduction scams, cable and utility discount scams, Medicare and health-insurance scams, law-enforcement imposters, mortgage scams, sweepstakes scams, COVID-related scams, home-improvement scams, student-loan scams, tech-support scams, and

others.

94.     The Task Force further reported that Bandwidth was identified as the point-of-entry or gateway provider, or as the immediate downstream provider to the originating provider, for more than 24% of this traceback traffic.

95.     The Task Force reported that at least 2,319 of those traceback notices had been sent to Bandwidth since August 2022, after the Task Force first reached out about its concerns regarding Bandwidth's call traffic.

96.     The Task Force further reported that, since July 2025, Bandwidth had been issued at least 487 tracebacks, with Bandwidth identified as the gateway provider or immediate downstream provider to the originating provider for more than 34% of recurrent high-volume illegal and/or suspicious robocalling campaigns.

97.     The Task Force estimated that, between October 2021 and November 2024, approximately 162.7 million Amazon/Apple imposter scam robocalls in a nationwide sample were facilitated by Bandwidth.

98.     The Task Force further estimated that, between May 2020 and April 2024, approximately 301 million SSA/IRS government-imposter scam robocalls in a nationwide sample were facilitated by Bandwidth.

99.     The Task Force also reported that, during the last 12 months reviewed, ZipDX identified more than 1,306 suspicious calls transmitted by Bandwidth from

704 unique calling numbers, with more than 97% of those calls made to numbers registered on the National Do Not Call Registry.

100.   The Task Force concluded that Bandwidth is and/or has been involved in transmitting call traffic indicative of, and associated with, recurrent high-volume illegal and/or suspicious robocalling campaigns and/or practices.

101.   Plaintiff's own experience has been consistent with the Task Force's concerns.

102.   In multiple TCPA investigations and cases, Plaintiff has identified Bandwidth as frequently involved in illegal or suspicious calls received by Plaintiff.

103.   Plaintiff has complained to Bandwidth many times regarding illegal robocalls involving Bandwidth numbers, Bandwidth customers, Bandwidth-carried traffic, or Bandwidth-associated calling activity.

104.   Bandwidth repeatedly responded, in substance, that it could not find the complained-of call traveling over its network, thereby suggesting that the caller-ID number Plaintiff received may have been spoofed.

105.   Plaintiff repeatedly advised Bandwidth that, when Plaintiff dialed back the caller-ID number displayed on his caller ID, Plaintiff reached the same telemarketer, scammer, or calling system involved in the original call.

106.   Plaintiff's callback testing indicated that the displayed caller-ID numbers

were not merely random spoofed numbers unrelated to the caller, but were valid, functioning numbers associated with the telemarketer, scammer, or calling operation.

107.   Bandwidth's repeated inability or refusal to trace such calls, despite Plaintiff's callback testing and reports, reflected an ineffective, inadequate, or deliberately limited robocall-mitigation response.

108.   Upon information and belief, Bandwidth receives materially more call traffic and revenue from high-volume calling customers, telemarketing platforms, gateway traffic, wholesale customers, and other large-volume network users than from a single residential telephone subscriber such as Plaintiff.

109.   Upon information and belief, illegal or suspicious telemarketing and scam campaigns can generate tens of thousands, hundreds of thousands, or millions of calls per month.

110.   Upon information and belief, even where per-call revenue is small, the aggregate revenue associated with high-volume calling traffic creates a financial incentive for providers in the call path to avoid meaningful disruption of large-volume calling customers.

111.   Plaintiff's Phone Numbers, by contrast, are ordinary residential telephone numbers that generate only a minuscule fraction of the call volume associated with large-scale telemarketing and scam campaigns.

112. The factual circumstances support a reasonable inference that Bandwidth's compliance practices favored continued carriage of high-volume call traffic over meaningful protection of the residential consumer who repeatedly reported that traffic.

113. Against this backdrop, Bandwidth's decision to disable Plaintiff's ability to receive inbound calls was especially unreasonable.

114. Bandwidth did not respond to Plaintiff's repeated complaints by effectively identifying and stopping the high-volume robocall traffic.

115. Instead, Bandwidth imposed a terminating-side network-level compliance rule that blocked Plaintiff's low-volume residential telephone numbers from receiving inbound calls.

116. Bandwidth's conduct therefore appears not to be a good-faith, narrowly tailored robocall-mitigation action, but rather an unreasonable, punitive, retaliatory, or self-protective action directed at the residential subscriber who repeatedly complained about Bandwidth-associated robocall traffic.

<u>Bandwidth Failed to Provide a Required<br>Public-Facing Redress Mechanism</u>

117. Bandwidth provided no meaningful public-facing point of contact through which Plaintiff, as the affected residential telephone subscriber, could report erroneous blocking of calls to his numbers.

17

118.   Bandwidth did not provide a readily available point of contact on its public-facing website sufficient for receiving call-blocking-error complaints from affected telephone users.

119.   Bandwidth did not provide Plaintiff a meaningful way to contact the Bandwidth personnel, department, compliance team, or network-operations team responsible for the terminating-side block.

120.   Plaintiff was forced to work indirectly through Anveo because Bandwidth provided no meaningful direct redress channel to Plaintiff.

121.    Bandwidth thereby placed Plaintiff in a closed loop: Bandwidth blocked the calls, but Bandwidth made itself unavailable to the affected residential telephone subscriber.

122.   Bandwidth's failure to provide a public-facing redress contact delayed correction.

123.   Bandwidth's failure to provide a public-facing redress contact concealed the basis for the block.

124.   Bandwidth's failure to provide a public-facing redress contact prevented Plaintiff from obtaining a timely explanation.

125.   Bandwidth's failure to provide a public-facing redress contact prevented Plaintiff from obtaining the blocked-call information required by FCC rules.

18

126.   Bandwidth's failure to provide a public-facing redress contact prolonged the loss of Plaintiff's residential telephone service.

Bandwidth Failed to Provide Required Blocking Information

127.   Plaintiff requested information concerning the blocking of calls to Plaintiff's Phone Numbers.

128.   Plaintiff requested that Anveo obtain information from Bandwidth concerning the blocking.

129.   Bandwidth did not provide Plaintiff a complete list of blocked calls to Plaintiff's Phone Numbers.

130.   Bandwidth did not provide Plaintiff the date and time of each blocked call.

131.   Bandwidth did not provide Plaintiff the calling number for each blocked call.

132.   Bandwidth did not provide Plaintiff the applicable SIP response codes.

133.   Bandwidth did not provide Plaintiff the applicable ISUP cause codes.

134.   Bandwidth did not provide Plaintiff the rule, database, analytics program, vendor, model, list, or compliance process used to block the calls.

135.   Bandwidth did not identify the person, department, system, customer, vendor, or designee that caused the terminating-side block to be applied.

136.   Bandwidth did not identify the date and time the terminating-side block was first applied to each of Plaintiff's Phone Numbers.

137.   Bandwidth did not identify the legal authority upon which it relied to impose a terminating-side block preventing inbound calls to Plaintiff's Phone Numbers.

138.   Bandwidth did not promptly cease the call treatment.

139.   Bandwidth did not meaningfully redress the erroneous blocking.

<u>Plaintiff Served a Demand Through Counsel</u>

140.   On April 29, 2026 at approximately 10:31 a.m. Eastern Time, Plaintiff's counsel served Bandwidth's counsel with a written demand for immediate removal of the terminating-side block affecting Plaintiff's Phone Numbers.

141.   The April 29, 2026 demand specifically identified the affected telephone numbers to Bandwidth's counsel. In this public filing, Plaintiff refers to those numbers as the 12 Number, 24 Number, 00 Number, and 22 Number.

142.   The April 29, 2026 demand described the ongoing call-completion failures.

143.   The April 29, 2026 demand referenced Bandwidth's reported confirmation that the numbers were being blocked by a "network-level compliance rule on the terminating side."

144. The April 29, 2026 demand demanded immediate restoration of normal inbound call completion.

145. The April 29, 2026 demand also demanded a full explanation identifying the specific rule, list, classification, model, database, vendor, customer report, compliance process, or other mechanism that caused the block or treatment.

146. The April 29, 2026 demand demanded that Bandwidth identify when the treatment was first applied to each number, who or what caused it, the factual basis for it, the legal basis for it, and whether Plaintiff's subpoena, FCC complaints, TCPA activity, or robocall reports were considered, referenced, or discussed in connection with the block.

147. The April 29, 2026 demand also placed Bandwidth on litigation-hold notice.

148. On April 29, 2026 at approximately 3:59 p.m. Eastern Time, Bandwidth's counsel acknowledged receipt of the demand and stated: "Thank you, we are in receipt and are reviewing this demand."

149. Bandwidth's counsel did not deny that the numbers were blocked.

150. Bandwidth's counsel did not deny that the block was terminating-side.

151. Bandwidth's counsel did not state that the block had been removed.

152. Bandwidth's counsel did not identify the compliance rule.

21

153.   Bandwidth's counsel did not identify the factual or legal basis for blocking inbound calls to Plaintiff's Phone Numbers.

154.   Bandwidth's counsel did not provide blocked-call data.

155.   Bandwidth's counsel did not provide the identity of any Bandwidth employee, department, vendor, customer, database, list, model, system, rule, or process responsible for the block.

156.   Instead, Bandwidth's counsel also sought to schedule a telephone conference for the following week concerning Bandwidth's objections to a subpoena in the separate *Specialty Medical Equipment v. Dobronski* litigation.

157.   On April 30, 2026 at approximately 6:49 a.m. Eastern Time, Plaintiff's counsel responded and expressly separated the subpoena dispute from the terminating-side blocking issue.

158.   Plaintiff's counsel advised Bandwidth that the subpoena issue and the terminating-side blocking issue were separate matters.

159.   Plaintiff's counsel advised Bandwidth that the blocking issue could not wait until the following week.

160.   Plaintiff's counsel again demanded that Bandwidth confirm that day whether the terminating-side block had been removed and normal inbound call completion restored.

161. Plaintiff's counsel also renewed the demand for the specific rule, treatment, classification, database, model, list, process, timing, cause, factual basis, legal basis, and whether Plaintiff's subpoena, FCC complaints, TCPA activity, or robocall reports were considered, referenced, or discussed in connection with the block.

162. At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

163. By the time of filing, Bandwidth had actual notice through counsel that its terminating-side network-level block was preventing Plaintiff from receiving ordinary inbound calls to Plaintiff's Phone Numbers.

164. By the time of filing, Bandwidth had been expressly advised that Plaintiff was missing important calls.

165. During that period, Plaintiff continued learning from additional persons that they had attempted to call him but were unable to reach him.

166. Bandwidth's continued blocking after actual notice was willful, knowing, unjust, unreasonable, and not protected by any call-blocking safe harbor.

167. Bandwidth's response that it was "reviewing" the demand was not an adequate redress process because Bandwidth allowed the residential service

deprivation to continue while providing no restoration, no blocked-call data, no rule identification, no legal basis, no responsible contact, and no meaningful explanation.

<u>Anveo Received No Further Operational Update From Bandwidth</u>

168. Anveo also continued seeking updates from its Bandwidth contacts concerning the outage and terminating-side block.

169. Upon information and belief, Anveo made multiple inquiries each day seeking an update from Bandwidth.

170. As of April 30, 2026 at approximately 8:00 p.m. Eastern Time, Anveo had received no further update or substantive response from the Bandwidth contacts with whom Anveo had been communicating regarding the outage.

171. As of May 1, 2026 at approximately 8:11 p.m. Eastern Time, Anveo still had received no substantive operational update from Bandwidth.

172. At the time of filing this Complaint on May 4, 2026, Anveo still had received no substantive operational update from Bandwidth regarding restoration of normal inbound call completion.

173. Thus, after Bandwidth identified the cause as a terminating-side network-level compliance rule, Bandwidth failed to provide a substantive correction or explanation through either relevant channel.

174. Bandwidth provided no substantive correction or explanation to

24

Plaintiff's counsel.

175. Bandwidth provided no further operational update to Anveo.

176. Bandwidth was not merely "looking into" an unknown problem.

177. Bandwidth had already identified the cause as its own terminating-side network-level compliance rule.

178. Bandwidth had already confirmed that inbound calls to Plaintiff's Phone Numbers were not completing as a result.

179. Bandwidth did not need to investigate whether the numbers were failing; Bandwidth already knew they were blocked.

180. Bandwidth did not need to investigate whether the issue was customer equipment; Bandwidth already identified the issue as a terminating-side compliance rule.

181. Bandwidth did not need to investigate whether the block affected inbound calls; Bandwidth already confirmed that inbound calls were not completing as a result.

182. What remained was for Bandwidth to remove the block, identify the rule, identify who caused it, and provide the required redress and blocked-call information.

183. Bandwidth failed to do so.

25

Calls to the 22 Number Are Generating Monetary Injury

184.    With respect to the 12 Number, 24 Number, and 00 Number, calls appear to be blocked before reaching Anveo in a manner that prevents ordinary call completion and prevents Plaintiff from receiving the calls.

185.    With respect to the 22 Number, however, callers receive the recorded announcement stating: "The number you are calling has been identified as likely a scam. It is recommended that you hang up now."

186.    Calls to the 22 Number appear to reach a point in the call path where the call is treated as a completed or chargeable call for purposes of Plaintiff's Anveo service.

187.    Plaintiff is charged on a per-call basis for calls to the 22 Number that reach that stage.

188.    Plaintiff has observed numerous hang-up calls to the 22 Number during the period in which Bandwidth's "likely a scam" announcement has been played.

189.    Plaintiff reasonably believes those hang-up calls are callers who heard the "likely a scam" announcement and disconnected.

190.    Plaintiff is therefore suffering a direct monetary loss for calls to the 22 Number, in addition to loss of use, reputational harm, missed communications, and other damages.

191.    Although the per-call charge is small, believed to be approximately one cent per call, the charge is imposed repeatedly and continues for so long as Bandwidth maintains the false "likely a scam" announcement or related call treatment.

### Plaintiff's Injuries

192.    Bandwidth's terminating-side block caused inbound calls to Plaintiff's Phone Numbers not to complete.

193.    Plaintiff was deprived of ordinary residential telephone service.

194.    Plaintiff lost the ability to receive lawful inbound calls.

195.    Plaintiff lost use of the affected Phone Numbers.

196.    Callers were unable to reach Plaintiff.

197.    Plaintiff has learned from multiple persons that they attempted to call him but could not reach him.

198.    Plaintiff missed important calls.

199.    Callers to the 22 Number were falsely told that the number had been identified as likely a scam and that it was recommended they hang up.

200.    Plaintiff has independently identified at least 127 callers who received, or are believed to have received, the "likely a scam" announcement during the period of impairment.

201. The number of persons to whom Bandwidth published or caused publication of the announcement continues to increase for so long as Bandwidth fails to restore ordinary inbound call completion.

202. Bandwidth's conduct damaged Plaintiff's reputation.

203. Bandwidth's conduct caused embarrassment, humiliation, annoyance, inconvenience, disruption, loss of use, and impairment of Plaintiff's residential telephone service.

204. Bandwidth's conduct caused Plaintiff to spend time investigating, documenting, escalating, and attempting to correct the problem.

205. Bandwidth's conduct caused monetary injury as to the 22 Number because Plaintiff is charged on a per-call basis for calls that reach the stage where the "likely a scam" announcement is played and callers hang up.

206. Bandwidth's conduct caused delayed legal communications, delayed case-resolution communications, and impaired settlement communications in pending litigation.

207. Bandwidth's conduct caused additional damages in an amount to be proven.

**COUNT I**
**Violation of 47 C.F.R. § 64.1200(k),**
**Actionable Under 47 U.S.C. § 227(c)(5)**

208.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

209.   Congress created an express private right of action in 47 U.S.C. § 227(c)(5) for persons receiving more than one telephone call within any 12-month period by or on behalf of the same entity in violation of regulations prescribed under 47 U.S.C. § 227(c).

210.   Section 227(c) directs the FCC to prescribe regulations implementing methods and procedures to protect residential telephone subscribers' privacy rights.

211.   Section 227(c) specifically directs the FCC to compare and evaluate alternative methods and procedures, including the use of telephone-network technologies, to protect residential telephone subscribers' privacy rights.

212.   The Eastern District of Michigan has held that the proper question is not whether a court should imply a new private right of action, but whether the regulation at issue falls within the express private right of action Congress already created in 47 U.S.C. § 227(c)(5). *Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025).

213.   Applying that reasoning, another court in this District held that 47 C.F.R.

§ 64.1601(e)(1), through 47 U.S.C. § 227(c)(5)(B), provides a private right of action. *Dobronski v. CHW Grp., Inc.*, No. 2:24-cv-11649, ECF No. 17 (E.D. Mich. Aug. 21, 2025). *See*, *also*, *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

214. Section 64.1200(k), like § 64.1601(e), regulates telephone-network technologies and call-treatment practices affecting whether residential telephone subscribers can receive, identify, challenge, and obtain redress for blocked or mishandled calls.

215. Section 64.1200(k) is part of the FCC's TCPA regulatory scheme and is enforceable through 47 U.S.C. § 227(c)(5).

216. Bandwidth was a terminating provider, voice service provider, common carrier, telecommunications carrier, or provider responsible for call blocking under 47 C.F.R. § 64.1200(k).

217. Bandwidth blocked calls to Plaintiff's Phone Numbers pursuant to a network-level compliance rule on the terminating side.

218. Bandwidth's block caused inbound calls to Plaintiff's Phone Numbers not to complete.

219. Bandwidth cannot benefit from its own wrongful blocking by contending that blocked calls are not actionable merely because Bandwidth intercepted or

30

prevented the calls from completing to Plaintiff before ordinary receipt.

220. Bandwidth violated 47 C.F.R. § 64.1200(k)(8) by failing to provide a single point of contact readily available on Bandwidth's public-facing website for receiving call-blocking-error complaints.

221. Bandwidth violated 47 C.F.R. § 64.1200(k)(8) by failing to provide Plaintiff a meaningful redress mechanism to challenge the terminating-side block.

222. Bandwidth violated 47 C.F.R. § 64.1200(k)(8) by failing to resolve the erroneous call treatment within a reasonable time.

223. Bandwidth violated 47 C.F.R. § 64.1200(k)(8) by failing to promptly cease the call treatment for Plaintiff's numbers after receiving notice that the calls should not have been blocked or that the call-delivery decision was inappropriate.

224. Bandwidth violated 47 C.F.R. § 64.1200(k)(9) by failing to return, and/or ensure transmission of, appropriate response codes for blocked calls to Plaintiff's numbers, including SIP or ISUP response codes required by the rule.

225. Bandwidth violated 47 C.F.R. § 64.1200(k)(10) by failing, upon request, to provide Plaintiff, the subscriber to the blocked numbers, at no charge and within three business days, a list of calls to those numbers blocked during the prior 28 days, including the date and time of the call and the calling number.

226. Bandwidth cannot invoke the no-liability safe harbor in 47 C.F.R. §

64.1200(k)(11) because it failed to satisfy the conditions necessary for that safe harbor.

227. Bandwidth did not reasonably determine, based on reasonable analytics and caller-ID authentication information where available, that inbound calls to Plaintiff's Phone Numbers were part of a particular call pattern highly likely to be illegal.

228. Bandwidth did not manage its network-based blocking with human oversight and network monitoring sufficient to ensure that it blocked only calls highly likely to be illegal.

229. Bandwidth did not cease blocking calls as soon as it had actual knowledge that the blocked calls were likely lawful or that the call-delivery decision was inappropriate.

230. Bandwidth did not disclose the blocking in a meaningful way to affected consumers or subscribers.

231. Bandwidth did not apply its blocking in a nondiscriminatory and competitively neutral manner.

232. Bandwidth did not provide the required redress.

233. Each call wrongfully blocked, dumped, rejected, warned against, or otherwise prevented from completing to Plaintiff's Phone Numbers was a separate call

and a separate violation.

234.  Plaintiff seeks statutory damages of up to $500 per violation under 47 U.S.C. § 227(c)(5)(B).

235.  Plaintiff therefore seeks up to $500 for each call wrongfully blocked, dumped, rejected, warned against, or otherwise prevented from completing to Plaintiff's Phone Numbers in violation of 47 C.F.R. § 64.1200(k).

236.  Bandwidth's violations were willful and/or knowing because Bandwidth intentionally applied a network-level compliance rule on the terminating side, received actual notice that the affected numbers were Plaintiff's Phone Numbers, admitted the block, and failed to promptly remove the block or provide required redress.

237.  Bandwidth's violations became independently willful and knowing no later than April 29, 2026 at approximately 3:59 p.m. Eastern Time, when Bandwidth's counsel acknowledged receipt of Plaintiff's written demand.

238.   The willfulness was compounded when Plaintiff's counsel followed up on April 30, 2026 at approximately 6:49 a.m. Eastern Time, expressly advising that the blocking issue could not wait and demanding same-day restoration.

239.  Yet, as of April 30, 2026 at approximately 8:00 p.m. Eastern Time, the numbers remained blocked or impaired, Plaintiff continued learning of missed

important calls, and Anveo had received no further update or substantive response from Bandwidth's operational contacts.

240.   At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

241.   Plaintiff seeks treble damages of up to $1,500 per willful or knowing violation under 47 U.S.C. § 227(c)(5)(C).

**COUNT II**
**Unjust and Unreasonable Practices - 47 U.S.C. § 201(b),**
**Enforced Through 47 U.S.C. §§ 206 and 207**

242.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

243.   Bandwidth is a common carrier, telecommunications carrier, voice service provider, or entity subject to 47 U.S.C. § 201(b).

244.   Section 201(b) requires all charges, practices, classifications, and regulations for and in connection with communication service to be just and reasonable.

245.   Section 201(b) declares unjust or unreasonable practices unlawful.

246.   Bandwidth's terminating-side network-level block was a practice for or in connection with communication service.

247. Bandwidth's practice of blocking Plaintiff's Phone Numbers from receiving inbound calls was unjust and unreasonable.

248. Bandwidth's terminating-side block was not narrowly tailored to any legitimate robocall-mitigation objective.

249. If Bandwidth believed Plaintiff's numbers were being spoofed or used as originating ANI, the proper focus would have been calls purporting to originate from those numbers.

250. Bandwidth instead imposed a terminating-side block preventing inbound calls to Plaintiff's Phone Numbers from completing.

251. Blocking the receipt of inbound calls to Plaintiff's Phone Numbers did not prevent robocalls from being originated.

252. Blocking the receipt of inbound calls to Plaintiff's Phone Numbers deprived Plaintiff of ordinary residential telephone service.

253. Bandwidth's failure to provide a meaningful public-facing redress mechanism was also unjust and unreasonable.

254. Bandwidth's failure to provide required blocked-call information was also unjust and unreasonable.

255. Bandwidth's failure to promptly remove the terminating-side block after actual notice was also unjust and unreasonable.

256.   Bandwidth's failure to provide a substantive response through either Plaintiff's counsel or Anveo after admitting the terminating-side compliance rule was also unjust and unreasonable.

257.   Bandwidth's continued impairment of Plaintiff's Phone Numbers at the time of filing this Complaint is unjust and unreasonable.

258.   Bandwidth's conduct was also unjust and unreasonable because Bandwidth had been specifically warned by the Anti-Robocall Multistate Litigation Task Force of continuing concerns regarding Bandwidth's transmission of high-volume illegal and/or suspicious robocall traffic, yet Bandwidth's response to Plaintiff's repeated reports was ineffective, evasive, or incomplete.

259.   Bandwidth's practice of repeatedly suggesting that complained-of calls could not be found on its network, while Plaintiff's callback testing reached the same telemarketer or scammer using the displayed caller-ID number, was unjust and unreasonable.

260.   Bandwidth's practice of failing to meaningfully address high-volume robocall traffic while imposing a terminating-side inbound block on Plaintiff's Phone Numbers was unjust and unreasonable.

261.   Bandwidth's conduct placed the burden of robocall mitigation on the residential subscriber who reported the calls, rather than on the high-volume callers,

36

customers, or network traffic associated with the illegal or suspicious calls.

262. Bandwidth's conduct violated 47 U.S.C. § 201(b).

263. Under 47 U.S.C. § 206, Bandwidth is liable for damages sustained by Plaintiff.

264. Under 47 U.S.C. § 207, Plaintiff may bring this action in federal district court to recover damages.

265. Plaintiff has been damaged by Bandwidth's violation of § 201(b).

## COUNT III
### Unjust or Unreasonable Discrimination, Prejudice, or Disadvantage - 47 U.S.C. § 202(a), Enforced Through 47 U.S.C. §§ 206 and 207

266. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

267. Bandwidth is a common carrier, telecommunications carrier, voice service provider, or entity subject to 47 U.S.C. § 202(a).

268. Section 202(a) makes it unlawful for a common carrier to make any unjust or unreasonable discrimination, preference, advantage, prejudice, or disadvantage in connection with like communication service.

269. Bandwidth subjected Plaintiff's Phone Numbers to a terminating-side network-level block.

270. Bandwidth thereby imposed unreasonable prejudice and disadvantage

on Plaintiff.

271.   Plaintiff's Phone Numbers were treated differently from ordinary residential telephone numbers that are allowed to receive inbound calls.

272.   Plaintiff was deprived of call completion to Plaintiff's Phone Numbers.

273.   The block appears punitive, retaliatory, or otherwise targeted because Plaintiff had reported a high volume of robocalls to the FCC involving Bandwidth numbers, Bandwidth customers, Bandwidth-carried traffic, or Bandwidth-associated activity.

274.   The timing is especially troubling because the blocking commenced at or around the same time Bandwidth was responding to a subpoena served by Plaintiff in *Specialty Medical Equipment, Inc. v. Mark Dobronski*, *et al.*, Case No. 2:25-cv-10664, pending in this District.

275.   The inference of unreasonable prejudice and disadvantage is strengthened by Bandwidth's history of notice concerning high-volume illegal and/or suspicious robocall traffic on its network.

276.   Bandwidth allegedly continued to transmit or facilitate large volumes of suspicious robocall traffic while Plaintiff, an individual residential subscriber and repeated robocall complainant, was subjected to a terminating-side block that impaired his ability to receive ordinary inbound calls.

277. Bandwidth's conduct therefore disproportionately burdened the residential consumer reporting robocalls while failing to apply an equally effective or narrowly tailored remedy against the large-volume traffic sources giving rise to the robocall problem.

278. Blocking Plaintiff's inbound residential call receipt did not mitigate robocalling.

279. Blocking Plaintiff's inbound residential call receipt punished or burdened the recipient of robocalls.

280. At minimum, Bandwidth imposed unreasonable prejudice and disadvantage by disabling Plaintiff's ability to receive inbound calls while failing to provide meaningful public-facing redress.

281. Bandwidth's conduct violated 47 U.S.C. § 202(a).

282. Under 47 U.S.C. § 206, Bandwidth is liable for damages sustained by Plaintiff.

283. Under 47 U.S.C. § 207, Plaintiff may bring this action in federal district court to recover damages.

284. Plaintiff has been damaged by Bandwidth's violation of § 202(a).

**COUNT IV**
**Mandamus and Compelled Restoration**
**of Communication Service - 47 U.S.C. § 406**

285. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

286. Bandwidth's terminating-side block prevents Plaintiff from receiving communication service.

287. Bandwidth's terminating-side block prevents callers from completing communications to Plaintiff's Phone Numbers, including interstate communications.

288. Bandwidth's terminating-side block prevents Plaintiff from receiving ordinary residential telephone communications.

289. At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

290. Section 406 authorizes federal district courts to issue writs of mandamus commanding a carrier to furnish facilities for communication when a carrier's violation prevents a person from receiving interstate or foreign communication service.

291. Plaintiff seeks an order compelling Bandwidth to remove all terminating-side network-level blocks, compliance rules, scam treatments, spam

40

treatments, warnings, rejection treatments, routing restrictions, or other call-treatment conditions affecting Plaintiff's Phone Numbers, including the 12 Number, 24 Number, 00 Number, and 22 Number.

292. Plaintiff seeks an order compelling Bandwidth to restore normal inbound call completion to Plaintiff's Phone Numbers.

293. Plaintiff seeks an order compelling Bandwidth to provide the required blocked-call data, call-treatment information, SIP/ISUP response information, and rule-identification information.

294. Plaintiff seeks an order compelling Bandwidth to furnish communication service on just, reasonable, and nondiscriminatory terms.

## COUNT V
## Declaratory and Injunctive Relief

295. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

296. An actual controversy exists between Plaintiff and Bandwidth.

297. Plaintiff contends that Bandwidth's terminating-side network-level blocking violates 47 C.F.R. § 64.1200(k), 47 U.S.C. § 201(b), and 47 U.S.C. § 202(a).

298. Bandwidth has not provided a full lawful justification for the terminating-side block.

299. Bandwidth has not provided required public-facing redress.

300. Bandwidth has not provided required blocked-call information.

301. Bandwidth has not fully disclosed the basis for blocking Plaintiff's Phone Numbers.

302. At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

303. Plaintiff is entitled to a declaration that Bandwidth's terminating-side block violated federal law.

304. Plaintiff is entitled to injunctive relief requiring Bandwidth to remove the block and restore normal inbound call completion.

305. Plaintiff is entitled to injunctive relief requiring Bandwidth to cease any announcement, label, warning, or call treatment stating or implying that Plaintiff's Phone Numbers are scam, likely scam, fraud, spam, high-risk, robocall-associated, spoofing-associated, unsafe, or should not be called.

306. Plaintiff is entitled to injunctive relief requiring Bandwidth to provide the required blocked-call and call-treatment information.

307. Plaintiff is entitled to injunctive relief requiring Bandwidth to preserve all records relating to the terminating-side block.

## COUNT VI
### Defamation / Defamation Per Se

308. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

309. Bandwidth caused callers attempting to reach Plaintiff's 22 Number to receive a recorded announcement stating: "The number you are calling has been identified as likely a scam. It is recommended that you hang up now."

310. The statement that Plaintiff's 22 Number had been identified as likely a scam was false.

311. The statement conveyed to callers that Plaintiff's residential telephone number was associated with scam, fraud, dishonest conduct, unlawful calling activity, or other improper conduct.

312. The announcement was of and concerning Plaintiff because callers dialing the 22 Number were attempting to reach Plaintiff and reasonably understood the announcement to warn that the telephone number associated with Plaintiff had been identified as likely a scam.

313. Bandwidth published the statement to third-party callers.

314. Upon information and belief, Bandwidth published or caused publication of the statement to at least 127 callers, and the statement continues to be published to additional callers so long as Bandwidth maintains the call treatment.

315. Bandwidth acted negligently, recklessly, knowingly, or with actual

malice in publishing or causing publication of the false statement.

316. The statement tended to harm Plaintiff's reputation.

317. The statement tended to deter others from communicating with or calling Plaintiff.

318. The statement was defamatory per se because it imputed improper, dishonest, fraudulent, scam-related, unlawful, or disreputable conduct to Plaintiff or to Plaintiff's telephone number.

319. Plaintiff suffered damages.

## COUNT VII
## False Light Invasion of Privacy

320. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

321. Bandwidth caused callers attempting to reach Plaintiff's 22 Number to receive a recorded announcement stating: "The number you are calling has been identified as likely a scam. It is recommended that you hang up now."

322. The 22 Number is Plaintiff's residential telephone number.

323. The 22 Number is used by persons attempting to reach Plaintiff.

324. The announcement was of and concerning Plaintiff because callers dialing the 22 Number were attempting to reach Plaintiff and reasonably understood the announcement to warn that the telephone number associated with Plaintiff had

been identified as likely a scam.

325. The statement was false.

326. The 22 Number had not lawfully or properly been identified as likely a scam.

327. Plaintiff is not a scammer.

328. Plaintiff does not use the 22 Number for scam activity, fraud, unlawful telemarketing, robocalling, spoofing, or other improper calling activity.

329. Bandwidth's announcement attributed to Plaintiff, or to Plaintiff's residential telephone number, characteristics or conduct that were false, including scam-related, fraudulent, dishonest, unlawful, or disreputable conduct.

330. The announcement placed Plaintiff in a false light before persons attempting to call him.

331. The false light would be highly offensive to a reasonable person because it falsely warned callers that Plaintiff's residential telephone number had been identified as likely a scam and recommended that callers hang up.

332. Upon information and belief, the announcement was not limited to a single private communication or a small closed group.

333. Upon information and belief, Bandwidth caused the announcement to be played automatically to callers attempting to reach the 22 Number during the period

of impairment.

334.   Plaintiff has independently identified at least 127 callers who received, or are believed to have received, the recorded announcement stating: "The number you are calling has been identified as likely a scam. It is recommended that you hang up now."

335.   The number of persons to whom Bandwidth published or caused publication of the announcement continues to increase for so long as Bandwidth fails to restore ordinary inbound call completion.

336.   The precise number of callers who received the announcement is uniquely within Bandwidth's possession, custody, or control because Bandwidth maintains or has access to the call-treatment, routing, signaling, announcement, rejection, and blocked-call records showing each attempted call to the 22 Number during the impairment period.

337.   The call records necessary to confirm the full scope of publication are uniquely within Bandwidth's possession, custody, or control.

338.   The announcement was not a private communication to a single person or a closed small group. It was a standing automated warning communicated to an open-ended class of callers attempting to reach Plaintiff's residential telephone number.

339. The recorded message was therefore sufficiently public to support a false-light claim.

340. Discovery is expected to show the full number of callers to whom Bandwidth published the "likely a scam" announcement, the date and time of each such call, the route and disposition of each call, and the system, rule, database, vendor, or process that caused the announcement to be played.

341. Bandwidth knew or acted in reckless disregard of the falsity of the announcement and the false light in which Plaintiff would be placed.

342. Bandwidth knew or recklessly disregarded that the 22 Number was Plaintiff's residential telephone number.

343. Bandwidth knew or recklessly disregarded that Plaintiff wanted incoming calls completed to the 22 Number.

344. Bandwidth knew or recklessly disregarded that continuing to play the "likely a scam" announcement after notice would falsely cast Plaintiff and his residential telephone number in a highly offensive false light.

345. Plaintiff suffered embarrassment, humiliation, reputational injury, loss of privacy, loss of use, annoyance, inconvenience, and other damages.

## COUNT VIII
### Injurious Falsehood / Disparagement - Pleaded in the Alternative

346. Plaintiff incorporates by reference the allegations set forth in Paragraphs

47

1 through 207.

347. Bandwidth published or caused publication of a false statement that Plaintiff's 22 Number had been "identified as likely a scam."

348. Bandwidth knew, should have known, or recklessly disregarded that the statement was false or misleading.

349. Bandwidth intended or reasonably should have expected the statement to cause callers to avoid calling Plaintiff.

350. The statement caused callers to hang up, refrain from completing calls, or avoid communications with Plaintiff.

351. Bandwidth's false "likely a scam" announcement caused callers to hang up, while Plaintiff was charged for those calls on a per-call basis, causing monetary loss in addition to reputational and service-related injury.

352. Plaintiff suffered pecuniary loss, loss of use, reputational injury, inconvenience, and other damages.

353. Plaintiff pleads this count in the alternative to Count VI and Count VII.

**COUNT IX**
**Tortious Interference with Advantageous**
**Economic Relationships and Settlement Expectancies**

354. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

355.   Plaintiff is retired.

356.   Plaintiff's Phone Numbers are used primarily for residential, personal, legal, and ordinary communications, not as business telephone lines.

357.   Plaintiff does not allege that his Phone Numbers are business telephone lines.

358.   Plaintiff does not allege that filing pro se TCPA lawsuits is a business activity.

359.   Plaintiff has pending TCPA and related lawsuits in which court officials, defense counsel, opposing parties, carriers, witnesses, and other persons may need to contact Plaintiff by telephone concerning scheduling, hearings, settlement, discovery, case resolution, and other litigation-related matters.

360.   Those pending legal matters include settlement discussions, case-resolution communications, discovery communications, scheduling communications, hearing-related communications, and other litigation-related communications.

361.   Plaintiff had valid advantageous economic relationships and expectancies arising from those pending lawsuits, including the expectancy of timely settlement discussions, timely resolution discussions, and communications with defense counsel concerning pending cases.

362. Those litigation-related relationships and settlement expectancies had economic value to Plaintiff.

363. Defense attorneys representing parties in Plaintiff's pending TCPA and related lawsuits have attempted to reach Plaintiff by telephone at Plaintiff's Phone Numbers.

364. Several defense attorneys have complained to Plaintiff that they attempted to reach him by telephone but were unable to do so.

365. Bandwidth's terminating-side block interfered with those communications.

366. Bandwidth's terminating-side block delayed communications with defense counsel.

367. Bandwidth's terminating-side block delayed resolution of some pending cases.

368. Bandwidth's terminating-side block caused Plaintiff to lose, or risk losing, settlement opportunities, timely settlement communications, and other economically valuable litigation-related opportunities.

369. Bandwidth knew or reasonably should have known that disabling a residential subscriber's telephone numbers would interfere with important communications.

370. Bandwidth knew or reasonably should have known that a person's residential telephone numbers may be used to receive legal, settlement, carrier-related, court-related, and other important communications.

371. Bandwidth had actual notice no later than April 29, 2026 that Plaintiff's Phone Numbers were being impaired and that Plaintiff wanted inbound calls completed.

372. Bandwidth had actual notice no later than April 30, 2026 that Plaintiff was missing important calls.

373. Despite that actual notice, Bandwidth continued the terminating-side block.

374. Bandwidth's interference was intentional because Bandwidth maintained, continued, or failed to remove a known terminating-side block after actual notice that the block was preventing callers from reaching Plaintiff.

375. Bandwidth's interference was improper and without justification because Bandwidth disabled Plaintiff's ability to receive inbound calls to his Phone Numbers, falsely caused the 22 Number to be announced as "likely a scam," failed to provide meaningful redress, and failed to promptly restore call completion after notice.

376. Bandwidth's conduct was wrongful per se because it violated federal communications law, FCC call-blocking rules, and common-law duties not to falsely

51

stigmatize Plaintiff's residential telephone number as likely a scam.

377.   Alternatively, Bandwidth's conduct was done with malice, improper motive, or without justification because the terminating-side inbound block did not mitigate robocalling, did not address alleged outbound traffic, and instead burdened the residential subscriber who had repeatedly complained about robocalls involving Bandwidth numbers or Bandwidth-associated traffic.

378.   Plaintiff suffered damages, including delayed legal communications, impaired settlement discussions, delayed case resolution, lost or impaired settlement opportunities, loss of use of his Phone Numbers, time, inconvenience, and other damages to be proven.

## COUNT X
## Negligence / Gross Negligence - Pleaded in the Alternative

379.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

380.   Bandwidth owed a duty to exercise reasonable care when classifying telephone numbers, applying network-level compliance rules, publishing scam warnings to callers, maintaining call-treatment systems, and implementing call-blocking or call-labeling measures that foreseeably affect residential subscribers and third-party callers.

381.   Bandwidth owed a duty to exercise reasonable care before causing

callers to a residential telephone number to hear an announcement that the number had been identified as likely a scam.

382. Bandwidth owed a duty to exercise reasonable care after receiving actual notice that Plaintiff's Phone Numbers were residential telephone numbers and that Plaintiff wanted inbound calls completed.

383. Bandwidth breached those duties by classifying, treating, blocking, or impairing Plaintiff's Phone Numbers without reasonable investigation or lawful basis.

384. Bandwidth breached those duties by causing the 22 Number to be announced to callers as having been identified as likely a scam.

385. Bandwidth breached those duties by maintaining the terminating-side block and false announcement after actual notice.

386. Bandwidth breached those duties by failing to provide meaningful redress, failing to provide required blocked-call information, and failing to promptly restore normal inbound call completion.

387. Bandwidth's conduct was grossly negligent because it demonstrated a substantial lack of concern for whether Plaintiff's Phone Numbers would remain impaired, whether callers would hear false scam warnings, and whether Plaintiff would continue missing important calls after actual notice.

388. Bandwidth's negligence and/or gross negligence caused Plaintiff to

suffer loss of use, missed communications, reputational harm, monetary loss as to the 22 Number, time, inconvenience, and other damages.

389.   Plaintiff pleads this count in the alternative to his federal statutory claims.

## DAMAGES AND WILLFULNESS

390.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 207.

391.   Bandwidth's conduct was willful and knowing.

392.   Bandwidth intentionally imposed a network-level compliance rule on the terminating side.

393.   Bandwidth admitted that the impacted telephone numbers were blocked by that terminating-side rule.

394.   Bandwidth admitted that inbound calls to those numbers were not completing as a result.

395.   Bandwidth received actual notice that the blocked numbers were Plaintiff's Phone Numbers.

396.   Bandwidth received actual notice that the blocking prevented Plaintiff from receiving ordinary inbound calls.

397.   Bandwidth failed to promptly remove the block.

398.    Bandwidth failed to provide required redress.

399.    Bandwidth failed to provide required blocked-call information.

400.    Bandwidth failed to provide a meaningful public-facing point of contact.

401.    Bandwidth failed to provide a substantive explanation to Plaintiff's counsel.

402.    Bandwidth failed to provide a substantive operational update to Anveo.

403.    At the time of filing this Complaint on May 4, 2026, Plaintiff's Phone Numbers remain blocked, impaired, or otherwise subject to Bandwidth's terminating-side call-treatment condition.

404.    Plaintiff seeks statutory damages, actual damages, consequential damages, treble damages, injunctive relief, declaratory relief, mandamus relief, costs, interest, and all other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark W. Dobronski respectfully requests that this Court enter judgment in his favor and against Defendant Bandwidth Inc. as follows:

A.    Declare that Bandwidth's terminating-side network-level block of Plaintiff's Phone Numbers violated 47 C.F.R. § 64.1200(k);

B.    Declare that Bandwidth's conduct violated 47 U.S.C. § 201(b);

C.    Declare that Bandwidth's conduct violated 47 U.S.C. § 202(a);

D.      Award statutory damages under 47 U.S.C. § 227(c)(5) in the amount of up to $500 for each call wrongfully blocked, dumped, rejected, warned against, or otherwise prevented from completing to Plaintiff's Phone Numbers;

E.      Award treble statutory damages under 47 U.S.C. § 227(c)(5)(C) in the amount of up to $1,500 for each willful or knowing violation;

F.      Award actual damages under 47 U.S.C. §§ 206 and 207;

G.      Award damages for loss of use, loss of telephone service, lost communications, reputational harm, false scam announcements, false-light invasion of privacy, inconvenience, time, expense, and consequential injury;

H.      Award damages for interference with Plaintiff's advantageous economic relationships and settlement expectancies, including delayed case resolution, lost or impaired settlement opportunities, loss of use, time, inconvenience, and other damages to be proven;

I.      Award damages for negligence and/or gross negligence;

J.      Issue mandamus relief under 47 U.S.C. § 406 compelling Bandwidth to remove all terminating-side blocks, compliance rules, scam treatments, spam treatments, warnings, routing restrictions, rejection treatments, or other call-treatment conditions affecting Plaintiff's Phone Numbers;

K.      Issue injunctive relief requiring Bandwidth to restore normal inbound

call completion to Plaintiff's Phone Numbers, including the 12 Number, 24 Number, 00 Number, and 22 Number;

L.     Issue injunctive relief requiring Bandwidth to cease any announcement, warning, label, or treatment stating or implying that Plaintiff's Phone Numbers are scam, likely scam, fraud, spam, high-risk, robocall-associated, spoofing-associated, unsafe, or should not be called;

M.     Order Bandwidth to provide all blocked-call information required by 47 C.F.R. § 64.1200(k), including the date, time, calling number, called number, response code, reason code, announcement, route, trunk group, classification, and disposition for each blocked call;

N.     Order Bandwidth to produce records sufficient to identify the number of callers to whom the "likely a scam" announcement was played, including date, time, calling number, called number, announcement, disposition, route, response code, reason code, and system or rule responsible for the announcement;

O.     Order Bandwidth to identify the network-level compliance rule, database, analytics program, vendor, designee, customer, system, person, or department responsible for the terminating-side block;

P.     Order Bandwidth to preserve all records relating to the classification, blocking, labeling, warning, dumping, routing, non-completion, or treatment of calls to or from Plaintiff's Phone Numbers;

Q.      Award costs and attorney fees where authorized by law;

R.      Award pre-judgment and post-judgment interest; and

S.      Grant such other and further relief as the Court deems just and proper.


### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

Dated: May 4, 2026

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*